IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SOUND INPATIENT PHYSICIANS, INC. )<br>and M.D. ROBERT A. BESSLER, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>M.D. T.M. CARR, )<br>)<br>Defendant. ) | No. 2:19-cv-02034-TLP-dkv<br><br>FILED UNDER SEAL |

**ORDER GRANTING MOTION TO COMPEL ARBITRATION OF PLAINTIFFS'
CLAIM FOR DECLARATORY JUDGMENT AND STAYING LITIGATION OF THIS
CLAIM PENDING ARBITRATION
AND
ORDER DENYING DEFENDANT'S MOTION TO STAY THE REST OF THE CASE
PENDING ARBITRATION
AND
ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLAIM
FOR BREACH OF REPRESENTATIONS AND WARRANTIES RELATING TO
UNDISCLOSED PHYSICIAN AGREEMENT LIABILITIES**

Defendant, T.M. Carr, M.D. ("Dr. Carr"), moves for partial dismissal and for the Court to compel arbitration of Plaintiffs' claim for declaratory judgment on the purchase price of his business under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 21.) Dr. Carr also seeks to stay the rest of the case pending arbitration. (*Id.*) What is more, Dr. Carr requests that the Court dismiss Plaintiffs' claim for breach of representations and warranties under Federal Rule of Civil Procedure 12(b)(6). (*Id.*) Plaintiffs responded timely. (ECF Nos. 27–29.)

For the reasons below, the Court GRANTS Defendant's Motion to Compel Arbitration of Plaintiffs' claim for declaratory judgment but STAYS this claim pending arbitration rather than dismissing it. The Court also DENIES Defendant's Motion to Stay the rest of the case pending

arbitration and DENIES Defendant's Motion to Dismiss Plaintiffs' claim for breach of representations and warranties about allegedly undisclosed physician agreement liabilities.

## BACKGROUND

Plaintiff, Robert Bessler, M.D. ("Dr. Bessler"), on behalf of Plaintiff Sound Inpatient Physicians ("Sound Inpatient") entered into an LLC interest and stock purchase agreement (the "Agreement") with Defendant to purchase the entire membership interest in two Tennessee professional LLCs and all of the issued and outstanding stock of a Tennessee professional corporation (the "Companies"). (ECF No. 18 at PageID 199.) Defendant was the sole member of the LLCs and the sole shareholder of the corporation. (*Id.*) The Companies were, and continue to be, in the business of providing emergency medicine physicians and other staff to emergency departments at five Memphis area hospitals. (*Id.* at 200.) After the transaction closed, Sound Inpatient began operating the Companies. (*Id.*)

Under the Agreement, the purchase agreement price ("Purchase Price") would equal 7.37 times the earnings before overhead realized by Sound Inpatient from operation of the Companies during a twelve-month period ending March 31, 2018 (the "Calculation Period"). (*Id.*) The Purchase Price, however, could not be less than $30 million nor greater than $59 million. (*Id.*) At closing, Plaintiff paid the first payment of $30 million. (*Id.*) The second payment amount was determinable at the end of the Calculation Period. (*Id.*)

At the end of the Calculation Period, Plaintiffs computed a total purchase price of $26,605,885.00—around $3.4 million below the minimum purchase price. (*Id.* at PageID 201.) So since the total figure was less than $30 million, the second payment was $0.00. (*Id.*)

Defendant contested this calculation. (*Id.*) He objected to including (1) around $1,844,000 of bad debt from before the Calculation Period and (2) certain non-medical

2

compensation expenses when calculating earnings before overhead. (*Id.* at 201–02.) At Defendant's request, Plaintiffs recalculated the Purchase Price and delivered a second calculation of $12,919,376—less than half the first calculation. (*Id.* at PageID 202.)

Under § 1.4(d) of the Agreement, if the parties have an unresolvable disagreement about an accounting issue over the Purchase Price, the parties "may immediately engage [a] Neutral Accountant to resolve any items that remain in dispute." (ECF No. 19-1 at PageID 232.) Defendant sought to submit issues about the Purchase Price to a Neutral Accountant under the Agreement but limited the review to Plaintiff's including the bad debt expenses in the calculation. (ECF No. 18 at 202–03.)

Defendant claims that he alone dictates the scope of the disputes reviewable by the Neutral Accountant. (*Id.* at PageID 203–04.) So Plaintiffs seek a declaratory judgment about the proper construction of the Agreement, the role of the Neutral Accountant, and the calculation of the Purchase Price. (ECF No. 18 at PageID 208–09.)

Plaintiffs also allege Defendant must indemnify them for breach of representation and warranty for undisclosed Physician Agreement Liabilities. (*Id.* at PageID 209–10.) Section 2.8 of the Agreement governs liability disclosures. Defendant represented that the Companies had no material liability except for those already in the Company Financial Information or the type of liability which he did not have to disclose according to GAAP. (ECF No. 19-1 at PageID 239.) Defendant further noted that the Companies had satisfied all "payroll liabilities" through February 29, 2016. (*Id.*)

At the same time Defendant did not disclose that most physicians under contract with the Companies had a right to receive compensation payments as accounts receivable arising from the services rendered by the physicians if they were terminated. (ECF No. 18 at PageID 206.)

Because the Companies waited to collect the accounts receivable before paying the physicians, Plaintiffs contend these were the sorts of future liabilities that Defendant should have disclosed. (*Id.*) After closing, Plaintiffs paid out around $1,500,000 to satisfy these undisclosed liabilities. (*Id.*) According to Plaintiffs, the failure to disclose these liabilities created another and unanticipated expense incurred by the Companies after closing. In turn, these expenses directly reduced the earnings and value of the Companies. (*Id.*) Plaintiffs therefore claim they are entitled to indemnification under Section 7 of the Agreement.[1] (*Id.* at PageID 209–10.)

To that end Plaintiff filed a three-count Complaint: (1) seeking declaratory judgment as to the calculation of the Purchase Price under the Agreement, (2) for breach of representation and warranty about physician liability agreements with the Companies, and (3) for breach of representation and warranty about Medical Scribe losses. (ECF No. 18 at Page 208–11.)

---

[1] Under Section 7 of the Agreement, Defendant must indemnify Plaintiffs

> from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, encumbrances and all costs and expenses (including, without limitation, reasonable attorneys' fees, interest and penalties) (collectively, 'Losses') which are sustained, incurred or paid by any Sound Physicians Indemnified Party resulting from or arising out of:
>
> a) Any inaccuracy in or breach of any representation or warranty of Dr. Carr contained in this Agreement or in any certificate, Disclosure Schedule or Exhibit delivered by Dr. Carr pursuant hereto; or
>
> b) Any failure by Dr. Carr to perform any of his covenants or obligations set forth in this Agreement.

(ECF No. 19-1 at PageID 257.)

# DISCUSSION

## I. Defendant's Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1–16, where a litigant establishes the existence of a valid agreement to arbitrate the dispute at issue, the district court must grant a motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d at 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). There is a strong presumption in favor of arbitration under the FAA, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003). So the Court must resolve any doubts about arbitrability in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). When considering a motion to compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Plaintiffs assert no federal statutory claims. (*See* ECF No. 1.) The Court will therefore make only the three remaining determinations.

### A. Section 1.4(d) of the Agreement is a Valid Agreement to Arbitrate

The Court first addresses whether the parties agreed to arbitrate this dispute. Defendant argues Plaintiffs' declaratory judgment claim is subject to arbitration because the Neutral Accountant provision in the Agreement is an agreement to arbitrate. (ECF No. 22 at PageID 311–12.) Section 1.4(d) of the Agreement states:

> Dr. Carr shall have the right to review the Purchase Price Schedule for a period of thirty (30) days following the delivery of the Purchase Price Schedule by Sound Physicians (the "Purchase Price Review Period"). . . . Dr. Carr shall have the

>right to object to any amount or computation appearing in the Purchase Price Schedule by notifying Sound Physicians in writing of such objections prior to the expiration of the Purchase Price Review Period. . . . If Dr. Carr timely objects to any item or computation appearing in the Purchase Price Schedule prior to the expiration of the Purchase Price Review Period, Dr. Carr and Sound Physicians shall, during the thirty (30) day period following the delivery of Dr. Carr's objection, attempt in good faith jointly to resolve the matters on the Purchase Price Schedule to which Dr. Carr Objected.  In the event Dr. Carr and Sound Physicians cannot resolve all of such matters by the end of such thirty (30) day period, either Dr. Carr or Sound Physicians may immediately engage the Neutral Accountant to resolve any items that remain in dispute.  Each of Sound Physicians and Dr. Carr shall present its position on the disputed items to the Neutral Accountant in writing, and the parties shall require the Neutral Accountant, within thirty (30) days thereafter, acting as an expert and not an arbitrator, to resolve only the matters objected to by Dr. Carr and not resolved by Dr. Carr and Sound Physicians with respect to the determination of the Purchase Price.  The resolution by the Neutral Accountant of such matters shall be within the range of the amounts claimed by Dr. Carr and Sound Physicians in their written submissions to the Neutral Accountant. . . .  The purchase price finally determined pursuant to this Section 1.4(d) shall be determinative for purposes of calculating the amount of the Second Payment and shall be final and binding on all of the parties to this Agreement.

(ECF No. 19-1 at PageID 232–33 (emphasis in original).)

Plaintiff argues there was no agreement to arbitrate because: (1) the Neutral Accountant provision is permissive, rather than mandatory; (2) the plain text of the Agreement says that the Neutral Accountant would act "as an expert and not an arbitrator"; and (3) Defendant's inconsistent actions constitute a waiver of any arbitration clause.  (ECF No. 27 at PageID 372–75.)  The Court will address each argument in turn.

### i.  Section 1.4(d) is mandatory once triggered under the terms of the Agreement

Plaintiff's claim that the parties do not have to engage the Neutral Accountant because the provision was permissive, not mandatory. (ECF No. 27 at PageID 374–75.)  This is not persuasive.  In fact, under the Agreement the arbitration clause is mandatory once triggered. *See Widmer Enterprises, LLC v. Falck USA, Inc.*, No. 18-cv-11138, 2019 WL 1057422, at *4 (E.D.

6

Mich. Mar. 6, 2019) ("The word 'may' signifies that the referral is at the option of either or both, but not required unless invoked.") (citing *Detroit Edison Co. v. Burlington Northern & Santa Fe Railway Co.*, 442 F. Supp. 2d 387, 390–91 (E.D. Mich. 2006)). Thus, if the Neutral Accountant is engaged by either Plaintiffs or Defendant, the mandatory nature of § 1.4(d)'s arbitration clause takes effect.

      **ii.**  **Section 1.4(d) amounts to 'arbitration in everything but name'**

Next, Plaintiff argues that the Neutral Accountant would act "as an expert, not an arbitrator." (ECF No. 27 at PageID 372–73.) Plaintiff is correct that the parties did not explicitly label § 1.4(d) as an arbitration provision. (ECF No. 19-1 at PageID 232.) But the Court must look at the substance of the agreement over form. *See Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 825 (6th Cir. 2015). "No particular language is required to evidence an agreement to arbitrate." *Widmer Enterprises*, 2019 WL 1057422, at *3 (quoting *Perceptics Corp. v. Societe Electronique et Sys. Trindel*, 901 F. Supp. 1139, 1142 (E.D. Tenn. 1992)). This language, alone, does not mean that the parties did not intend to arbitrate.

To that end, the Sixth Circuit has noted that "the following elements . . . amount[] to 'arbitration in everything but name': finality, 'an independent adjudicator, substantive standards (the contractual terms . . .), and an opportunity for each side to present its case.'" *Shy*, 781 F.3d at 825 (quoting *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004)). As explained below, these four factors, known as the *Fit Tech* factors, are present here and therefore § 1.4(d) is a valid agreement to arbitrate.

      **a.**  **Section 1.4(d) provides a final, binding remedy based on the Neutral Accountant's decision**

The Neutral Accountant makes the final decision about inclusion of Bad Debt Expenses into the Earnings Before Overhead calculation. (ECF No. 19-1 at PageID 232 ("The Purchase

7

Price finally determined pursuant to this Section 1.4(d) *shall be determinative* for purposes of calculating the amount of the Second Payment and shall be final and binding on all of the parties to this Agreement.") (emphasis added).) Plaintiff contends that the Neutral Accountant has no authority to issue any award. (ECF No. 27 at PageID 375–76.) Plaintiffs' arguments are unpersuasive. No arbitrator has the authority to enter a judgment like a court of law. Parties can, however, come back to the Court to enforce the Neutral Accountant's decision under the Agreement. *See* 9 U.S.C. § 9.

### b. Section 1.4(d) allows the Neutral Accountant to apply substantial contractual standards

Plaintiff alleges Defendant will not allow the Neutral Accountant to apply the substantive standards laid out in the Agreement. (ECF No. 27 at PageID 376.) Yet § 1.4(d) says the Neutral Accountant would apply the standards in § 1.4(a) to determine whether or how much the parties should include Bad Debt Expenses in the calculation of Earnings Before Overhead. (*See* ECF No. 19-1 at PageID 231) ("The Purchase Price will be equal to (i) a multiple determined in the manner described in Schedule B hereto times (ii) the Companies' consolidated "Earnings Before Overhead" generated during the twelve (12) month period ending March 31, 2018 (the "Calculation Period"); provided, however, that in no event shall the Purchase Price be less than THIRTY MILLION DOLLARS ($30,000,000) or greater than FIFTY-NINE MILLION DOLLARS ($59,000,000).") (emphasis in original).)

### c. Section 1.4(d) allows each side to present its case

Plaintiffs allege that Defendant's interpretation of the arbitration provision—allowing arbitration of only his objections—would prevent Plaintiff from presenting its case to the Neutral Accountant. (ECF No. 27 at PageID 376–77.) Section 1.4(d) of the Agreement explicitly states "[e]ach of Sound Physicians and Dr. Carr shall present its position on the disputed items to the

8

Neutral Accountant . . . ." (ECF No. 19-1 at PageID 232.) Thus, Plaintiffs will be able to present their argument for why they included Bad Debt Expenses in the calculation of the Purchase Price.

### d. The Neutral Accountant would act as an independent adjudicator

The parties intend to engage Ernst & Young as the Neutral Accountant. (ECF No. 19-1 at PageID 264.) This firm is not associated with either party. Plaintiff argues Defendant's interpretation of the arbitration provision does not allow the Neutral Accountant to act independently. (ECF No. 27 at PageID 377.) Plaintiff points out that § 1.4(d) requires the Neutral Accountant to decide within 30 days. (*Id.*) Courts however have upheld Arbitration clauses with similar time restrictions. *Widmer Enterprises*, 2019 WL 1057422 at *2.

### iii. Defendant did not waive his right to arbitrate under § 1.4(d)

Finally, Plaintiffs argue that even if the Court finds that the four *Fit Tech* factors are present, Defendant has waived the agreement to arbitrate. Defendant's "inconsistent actions," according to Plaintiffs, evidence waiver of any agreement to arbitrate. (ECF No. 27 at PageID 374.) For example, Defendant stated that he was prepared "to enforce all rights and remedies available at law." (*Id.*) And Plaintiff claims that no accountant has the power to enforce such rights and remedies. (*Id.*)

A party may waive its right to arbitrate by "engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Aqualucid Consultants, Inc. v. Zeta Corp.*, 721 F. App'x 414, 418 (6th Cir. 2017) (internal quotations omitted) (citing *Hurley v. Deutsche Bank Trust Co.*, 610 F.3d 334, 338 (6th Cir. 2010)); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003). To

9

establish waiver, Plaintiff must prove both elements. *Shy*, 781 F.3d at 828. "[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (quoting *Glazer*, 394 F.3d at 444).

Here, the fact that Defendant stated he was prepared "to enforce all rights and remedies available at law" is not "completely inconsistent" with the agreement to arbitrate. Under the Agreement, Defendant may seek redress in *either* the courts or by submitting the matter to a neutral accountant. (ECF No. 19-1 at PageID 232–33.) What is more, that the parties extended Purchase Price Review Period, and that Defendant questioned Plaintiff's calculation of the Purchase Price is not inconsistent with the arbitration provision. Nor does it per se establish that Plaintiffs suffered any prejudice.

Plaintiffs claim no prejudice resulting from Defendant's motion to compel arbitration. Nor have they pointed to any resources exhausted that would not be transferrable to arbitration of this issue. *See Aqualucid*, 721 Fed. App'x at 418 ("Without discovery or any significant advancement in the litigation, Plaintiffs likely 'wasted relatively few resources on unnecessary litigation' due to Defendants' delay [in asserting their arbitration defense]") (citing to *Shy*, 781 F.3d at 830). Without a showing of either inconsistent actions or prejudice to Plaintiff, there can be no waiver by Defendant.

Having found that § 1.4(d) of the Agreement is a valid arbitration provision and that Defendant's actions did not constitute a waiver, Defendant's Motion to Compel Arbitration is GRANTED. Rather than dismissing the claim, however, the Court STAYS this claim pending the Neutral Accountant's determination. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its

own docket.") (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)).  Next, the Court turns to the scope of the arbitration agreement.

> **B.     The Scope of the Arbitration Agreement Applies Only to the Matters Objected to by Dr. Carr and Not Resolved by the Parties**

Plaintiff contends that Defendant's interpretation of § 1.4(d) unduly restricts the disputes heard by the Neutral Accountant.  Plaintiff thus argues that the scope of the arbitration provision encompasses only "any items that remain in dispute" and the accountant should determine the entire Purchase Price.  (ECF No. 27 at PageID 379.)  Defendant argues that § 1.4(d) encompasses only objections made by him to the Purchase Price Schedule which remain in dispute after the parties' good faith effort to resolve his objections.  (ECF No. 22 at PageID 316–17.)

District courts have the authority to decide, first, whether an issue falls under the arbitration agreement.  *Stout*, 228 F.3d at 714.  Under the FAA, arbitration "is a matter of consent, not coercion, and the parties are generally free to structure their arbitration agreement as they see fit."  *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  It follows then, that parties may validly limit the scope of an arbitrator's review by contract.

Indeed, several circuits have allowed arbitration covering only a part of the overall dispute between the parties.  *See, e.g.*, *Fit Tech*, 374 F.3d at 7; *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 4 (1st Cir. 2000); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 831–33 (2d Cir. 1988).  It is well settled, however, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

11

Here, § 1.4(d) of the Agreement limits the scope of arbitration. Section 1.4(d) provides that the Neutral Accountant may decide "only the matters objected to by Dr. Carr and not resolved by Sound Physicians and Dr. Carr with respect to the determination of the Purchase Price." (ECF No. 19-1 at PageID 232–33.) "When the terms of a contract are unambiguous, '[i]t is the Court's duty to enforce contracts according to their plain terms." *Power & Tel. Supply Co. v. Suntrust Banks, Inc.*, No. 03-2217 M1/V, 2005 WL 1329851, at *2 (W.D. Tenn. May 1, 2005).

Plaintiff's claim here is unfounded. Defendant's interpretation of the arbitration provision does not impermissibly limit the scope of the arbitrator's review. Rather Section 1.4(d) provides:

> If Dr. Carr timely objects to any item or computation appearing in the Purchase Price Schedule . . . [the parties shall] attempt in good faith jointly to resolve the matters on the Purchase Price Schedule to which Dr. Carr objected. In the event Dr. Carr and Sound Physicians cannot resolve all of such matters . . . either Dr. Carr or Sound Physicians may immediately engage the Neutral Accountant to resolve any items that remain in dispute.

(ECF No. 19 at PageID 233.) Section 1.4(d) specifies that the parties agreed to structure their arbitration agreement so that arbitration is limited to only those issues objected to by Dr. Carr and only his objections that remain unresolved by the parties. The parties drafted § 1.4(d)'s arbitration clause to be quite narrow. And the language of § 1.4(d) leaves no doubts about the scope of arbitrable issues—only those matters to which Dr. Carr objected and left unresolved by the parties are subject to arbitration. (*Id.*)

### C.     The Remaining Claims Should Not Be Stayed Pending Arbitration

Defendant has also requested that the Court enter a stay of all proceedings should this Court grant the Motion to Compel Arbitration. (ECF No. 22 at PageID 317.) Plaintiffs argue that the Court should stay the proceedings as to *only* its declaratory judgment claim. (ECF No. 27 at PageID 382–83.)

12

The FAA directs the Court to stay an action pending arbitration. 9 U.S.C. § 3. "When parties to a lawsuit have entered a valid arbitration agreement, the proper procedure is for the court to compel arbitration and stay proceedings while arbitration occurs." *Regions Bank v. Chanda*, No. 11-2296-STA, 2011 WL 4352722 at *5 (W.D. Tenn. Sept. 16, 2011) (citing *Fazio v. Leman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)).

Plaintiffs' declaratory judgment claim is arbitrable. *See supra* pp. 5–9. Plaintiffs' breach of representation and warranty claims, however, do not fall under the language of § 1.4(d)'s agreement to arbitrate and are wholly unrelated to Plaintiffs' arbitrable declaratory judgment claim. The Agreement provides for indemnification, apart from any calculation of the Purchase Price. Because resolution of Plaintiffs' claims for breach of representation and warranty is independent of the declaratory judgment claim, a stay of these claims is inappropriate. *See Regions Bank*, 2011 WL 4352722 at *9 (declining to stay nonarbitrable claims in a separate, state court matter where the claims were unrelated to the arbitrable claim); *Tennessee Tractor LLC v. WH Administrators, Inc.*, No. 1:17-cv-2829-STA-egb, 2018 WL 1277751, at *4 (W.D. Tenn. Mar. 12, 2018) ("And this Court is of the opinion that unless the issues are not feasibly separated, it should proceed normally as to non-arbitrable claims.") (citing *Sean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 225 (1985). *Cf. Duncan-Williams, Inc. v. Bonds.com Group, Inc.*, No. 2:08-cv-02848, 2009 WL 10699716 at *8 (W.D. Tenn. Sept. 18, 2009) (staying proceedings where the nonarbitrable claim was derivative of the arbitrable claim). As a result, Defendant's Motion to Stay the rest of the case pending arbitration is DENIED.

## II.     Defendant's Motion to Dismiss Plaintiffs' Breach of Representation and Warranty Claim as to Undisclosed Physician Agreement Liabilities

### A.     Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

Though a court will grant a motion to dismiss if a plaintiff has no plausible claim for relief, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)). "Dismissal of the action is proper if there is an absence of law to support the type of claim made, if the facts alleged are insufficient to state a valid claim, or if, on the face of the complaint, there is an insurmountable bar to relief." *Doe v. Ohio*, No. 2:91-CV-464, 2012 WL 12985973, at *5 (S.D. Ohio Feb. 16, 2012) (citations omitted).

In his motion to dismiss, Defendant attaches a notice of claim for indemnification sent on April 18, 2017 ("Notice"). "As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Rule 56." *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016)

14

(quotations omitted).  But "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Id.* (quotations omitted).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied."  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").   Plaintiffs reference the Notice once in the Complaint:

> The survival period for the representations and warranties on which Plaintiffs' claims for Losses are based extended until September 16, 2017, eighteen months after closing.  Prior to that time, on April 18, 2017, Plaintiffs duly delivered notice of their claims for these Losses to Defendant and demanded that payment of the Losses be made by Defendant to Plaintiffs.  Per the agreement, the delivery of such notice has extended the survival period of these representations until any disputes among the Parties with respect thereto are resolved.

(ECF No. 18 at PageID 208.)

Here, the Notice attached to Defendant's Motion to Dismiss is central to Plaintiffs' indemnification claim.  Plaintiffs have alleged that they gave proper notice of the intent to make an indemnification claim and have therefore satisfied the prerequisite to that claim under the Agreement.  (ECF No. 18 at PageID 208.)  The existence of proper notice directly concerns Plaintiffs' claim and would affect the outcome of this suit.  After all, it is under this referenced Notice that Plaintiffs allege their indemnification claim is proper.  So the Court may consider these documents without converting Defendant's Motion to one for summary judgment.

   **B.**  **Plaintiffs' April 18, 2017 Notice of Intent to Seek Indemnification**

Defendant filed a letter from Plaintiffs notifying him of their indemnification claims under § 2.18(b) of the Agreement.  (*See* ECF No. 23.)  The notification listed "[l]oss in the

15

amount of $1,350,000 related to physician severance liabilities that were not disclosed." (*Id.* at PageID 330.) As a result, according to Defendant, the Notice does not cover Plaintiffs' claim of indemnification for undisclosed Physician Agreement Liabilities. (ECF No. 22 at PageID 319.) Plaintiffs argue that the Notice under § 2.18(b) of the Agreement also provides on its face the "nature and basis" for the indemnification claim under § 2.8 of the Agreement and that Plaintiffs later elaborated upon it in further communications. (*Id.* at PageID 381–82.)

Section 7 of the Agreement governs indemnification claims by Sound Inpatient and requires that any notice about indemnification of losses (1) be timely, (2) be in writing, and (3) "state the nature and basis" of the loss. (*Id.* at PageID 256–58.) Section 7.1 provides that Plaintiffs must make any claim for indemnification for breach of representation or warranty arising out of § 2.8 within 24 months of the Closing Date. (*Id.* at PageID 256–57.) And Section 7.2 is Defendant's covenant to indemnify Plaintiffs from all liabilities arising out of breach of representation or warranty in the Purchase Agreement. (*Id.* at PageID 257.) Finally, § 7.4(a) states that Plaintiffs must give notice must in writing within 30 days of learning of the Loss. (*Id.* at PageID 258.)

Plaintiffs allege that Defendant breached its duty to provide true and correct representations and warranties under the Agreement by failing to disclose certain liabilities related to physician payments as the Agreement required. (ECF No. 18 at PageID 209.) Despite Defendant's representations that no such liabilities existed, Plaintiffs incurred payments to physicians totaling roughly $1,500,000. (ECF No. 1 at PageID 12.) In response, Defendant argues Plaintiffs failed to satisfy the contractually agreed-upon notice requirement of any indemnification claim related to undisclosed Physician Agreement Liabilities. (ECF No. 22 at PageID 318–19.)

16

Here, the Agreement requires only that the Notice provide the "nature and basis of [the] Loss and set forth a calculation of the amounts of the Loss, to the extent reasonably ascertainable at the time such notice is given."  (ECF No. 19-1 at PageID 258.)  Here, the Notice stated that Plaintiffs would seek indemnification for:

> Loss in the amount of $1,350,000 related to physician severance liabilities that were not disclosed on Schedule 2.18(b), in breach of the representation and warranty set forth in Section 2.18(b) of the Purchase Agreement.  Most all of the physicians under contract to the various Carr entities are entitled to receive "termination pay" ranging from at least a month to as much as 6 months of continued payout of accounts receivable related to collections for the professional services rendered by such physicians.

(ECF No. 23-2 at PageID 330.)  Defendant claims that Plaintiffs' Notice about Physician Termination Losses materially differs from the later Complaint about Physician Agreement Liabilities, thus, rendering the Notice ineffective.  (ECF No. 22 at PageID 319.)  That said, the Agreement does not require Plaintiffs to provide exact notice that must remain unchanged.  It merely requires notice of the "nature and basis" of the claim and a calculation of loss "reasonably ascertainable at the time such notice is given."  (ECF No. 19-1 at PageID 258.)  That Plaintiffs' terminology has evolved since April 18, 2017 does not matter, so long as Plaintiff provided reasonable notice.

Defendant also argues the Notice was insufficient because it provided that Plaintiffs sought indemnification under § 2.18 of the Agreement.  (ECF No. 22 at PageID 319.)  Section 2.18 only pertains to employees, and Defendant claims these physicians were independent contractors.  (*Id.*)  And Defendant contends that Plaintiffs' attempt to switch their claim from § 2.8 to § 2.18 is fatal.[2]  (*Id. at* PageID317–19.)

---

[2] Section 2.8 of the Agreement governs liability disclosures and ensures that "[t]he Companies have no material liability . . . . except for (i) liabilities set forth in the Company Financial Information, and (ii) liabilities of the type that are not required to be disclosed on a balance sheet

17

Although Defendant rightly points out these flaws in Plaintiffs' Notice, those flaws do not per se invalidate it.  The Notice states that Plaintiffs intend to seek indemnification for $1,350,000 of undisclosed liabilities surrounding the *physicians' agreements*—not employees' or independent contractors' agreements—with the Companies.  (ECF No. 23-2 at PageID 330.)  Whether these physicians constitute employees or independent contractors, and whether Plaintiffs' claim arises under § 2.8 or § 2.18 of the Agreement, Plaintiffs allege in the Amended Complaint, and the Notice supports their allegation, that they informed Defendant of the "nature and basis of [the] Loss and [the] calculation of the amounts of the Loss, to the extent reasonably ascertainable at the time such notice is given."  (ECF No. 19-1 at PageID 258.)  This is all that the Agreement requires.  And accepting these allegations as true, Plaintiffs state a claim for relief in Count II of their Amended Complaint, seeking indemnification for undisclosed Physician Agreement Liabilities.

All in all, the language of the Notice meets the requirements of the Agreement.  It stated the nature and basis of the loss: undisclosed liabilities to physicians, whether ongoing throughout employment or because of termination.  And the Notice also gave a rough estimate of the loss calculation: $1,350,000.  And Plaintiffs elaborated on their Notice in later correspondence with Defendant—"[T]he failure to disclose the liability of the Carr entities for these termination payments to the contracted physician constitutes breach of the representation in Section 2.08 of the Purchase Agreement."  (ECF No. 29 at PageID 398.)

---

. . . prepared in accordance with GAAP."  (ECF No. 19-1 at PageID 239.)  Section 2.18(b) applies to disclosure of employee and labor matters and provides, in short, that the Companies owe severance payments upon termination of employees of the Companies.  (*Id.* at PageID 247.)

18

Because Plaintiff's Notice properly advised Defendant of the nature and basis of the indemnification claim, Defendant's Motion to Dismiss Plaintiffs' claim for undisclosed Physician Agreement Liabilities is DENIED.

## **CONCLUSION**

For these reasons, the Court GRANTS Defendant's Motion to Compel Arbitration of Plaintiffs' claim for declaratory judgment and STAYS that claim pending arbitration. The Court DENIES Defendant's Motion to Stay the rest of the case pending arbitration and DENIES Defendant's Motion to Dismiss Plaintiffs' claim for breach of representations and warranties relating to undisclosed Physician Agreement Liabilities.

**SO ORDERED**, this 10th day of October, 2019.

                                              s/ Thomas L. Parker
                                            THOMAS L. PARKER
                                            UNITED STATES DISTRICT JUDGE